RUFINA WINSLOW, Plaintiff-Appellant, *v.* STATE OF HAWAII; SHIRLEY SMITH, individually and in her capacity as Deputy Attorney General; ANDREW CHANG, individually and in his capacity as Director of the Department of Social Services and Housing; KAYO CHUNG, individually and in his capacity as Administrator of the Hawaii Youth Correctional Facility at Koolau; VERNON CHANG, individually and in his capacity as an Administrator of the Hawaii Youth Correctional Facility at Koolau; DONALD BOTELHO, individually and in his capacity as Director of Civil Services; and the UNITED PUBLIC WORKERS, Local 646, AFSCME, AFL-CIO, collectively; and HENRY EPSTEIN, individually and in his capacity as State Director of the United Public Workers; and JOHN DOES, one through ten, (1-10), Defendants-Appellees

NO. 6728

MARCH 23, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY HAYASHI, C.J.

Appeal is taken from the orders of the court below granting summary judgments to appellees, State of Hawaii; and Shirley Smith, Andrew Chang, Kayo Chung, Vernon Chang, and Donald Botelho, individually and in their capacities as Deputy Attorney General, Director of the Department of Social Services and Housing (DSSH), Administrators of the Hawaii Youth Correctional Facility, and Director of Civil Services, respectively (hereinafter referred to as State), and the United Public Workers, Local 646, AFSCME, AFL-CIO, collectively; and Henry Epstein, individually and in his capacity as State Director of the United Public Workers (hereinafter referred to as Union), in an action for breach of a labor contract.

With respect to the State, only one issue is before us and that is whether a State employee whose employment is governed by a labor agreement is required to exhaust the remedies established in the labor agreement for grievance procedures before an action against the public employer can be brought in circuit court. For the Union, the questions presented are these: (1) Whether grievance procedures established in the labor agreement to resolve disputes between

the public employer and union members apply to an action against the union as well; (2) Whether HPERB has exclusive jurisdiction to hear complaints of unfair labor practices brought against a union by a union member; and (3) Whether summary judgment in favor of the union was appropriate in this instance.

The appellant, a State employee, is a member of the Unit 10, Non-Professional Hospital and Institutional Workers' bargaining unit. The United Public Workers' Union is the exclusive bargaining representative for this unit. Section 15 of the labor agreement between Unit 10 and the State establishes the procedures to be followed where an employee alleges that the employer has violated terms of the agreement. Section 15.03 permits the employee to pursue the grievance without union representation if the employee so desires.[1] The agreement encourages the informal settling of grievances between the employee and the immediate supervisor.[2] If a grievance cannot be settled on an informal basis, the contract provides formal procedures as follows:

At Step 1, formal written grievance is filed.

15.11 The grievance shall be presented to the Superintendent or Administrator of a facility or his designee in writing. . . .

Step 2 is appeal to the division head.

15.13 Step 2. If the matter is not satisfactorily settled at Step 1, the grieving party may file a letter of appeal . . . with the appropriate Division Head. . . .

Step 3 is appeal to the department head.

15.16 Step 3. If the matter is not satisfactorily settled at Step 2, the grieving party may file a letter of appeal . . . with the department head or his designee. . . .

---

[1] 15.03 Any individual may process his grievance and have the grievance heard without the participation of the Union representative, provided that the Union shall have been informed of the time and place of such grievance meeting in order to arrange to be present.

[2] 15.08 A grievance shall, whenever possible, be discussed and settled informally between the grievant and his immediate supervisor. The grievant may be assisted in his request by his Union steward or representative. There shall be no obligation by the Employer to consider any grievance not filed within the specified time limit stated in each step.

Step 4 is appeal to the employer.

15.19    Step 4. If the matter is not satisfactorily settled at Step 3, the grieving party may file a letter of appeal . . . with the Employer or his representative. . . .

Step 5 provides for arbitration.

15.23    Step 5. Arbitration. If the matter is not settled at Step 4, and the Union desires to proceed with Arbitration, it shall serve written notice on the Employer or his representative of its desire to arbitrate within ten (10) days of receipt of the decision of the Employer in Step 4.

15.24    No grievance may be arbitrated unless it involves an alleged violation, misinterpretation, or misapplication of a specific term or provision of the Agreement.

In the instant case, appellant was employed as a youth correctional officer at the Hawaii Youth Correctional Facility at Koolau. While employed there, appellant was the victim of a strangulation attempt after she was subpoenaed to testify in a case involving one of the youths being held there. The medical and psychological treatment she required was covered through Workmen's Compensation. As a result of the incident, appellant feared for her safety.

In a letter to the director of the DSSH on April 17, 1975, appellant requested transfer to another position. On April 30, 1975, the director responded by granting her leave without pay while he explored the possibility of her transfer to another position. Appellant filed a grievance on May 5, 1975, in accordance with the grievance procedures set out above alleging that the failure to grant her request for paid administrative leave and transfer violated the terms of the collective bargaining agreement, specifically, Sections 11 (Discipline), 12 (Layoff), 49 (Sanitary Conditions), 50 (Staffing and Workload), and 46 (Working Conditions and Safety). In her grievance, appellant also made allegations of sex discrimination and unspecified Occupational Safety and Health Act (OSHA) violations. By letter dated May 14, 1975, the director acknowledged receipt of appellant's grievance and a subsequent letter relating to her personal dissatisfaction with his decision. He scheduled a meeting with appellant and her union representative for the 16th of May, 1975. However, on May 15, appellant filed suit in circuit court against the State and the Union alleging essentially the same claims that were

initially raised in the grievance.[3] On May 16, 1975, the director met with the appellant and her attorney, E. Courtney Kahr, together with representatives from her union, at the director's office. The first two steps of the grievance procedure were waived to permit appellant to meet with the director at the third step level. The grievance was not resolved at Step 3; in a letter dated June 6, 1975, the director advised the appellant to pursue to the next step in the grievance procedure (Step 4). Appellant, however, with the advice of counsel, chose not to do so and, instead, pursued the action in circuit court.

On February 18, 1976, the State filed a motion for summary judgment pursuant to Rule 56(b) of the Hawaii Rules of Civil Procedure (HRCP). On June 23, 1976, after a hearing, the trial court granted the State's motion for summary judgment.[4] On July 7, 1977, approximately a year later, the Union filed a motion for summary judgment. On July 25, 1977, appellant filed a memorandum in opposition to the Union's motion for summary judgment together with counter-affidavits pursuant to Rule 56(e), HRCP. After hearing on August 4, 1977, the trial court granted the Union's motion for summary judgment.

We affirm the judgment favoring the State and reverse the judgment in favor of the Union.

As a member of the Unit 10 bargaining unit, appellant's employment was governed by the terms and conditions of the Unit 10 collective bargaining agreement and, specifically, the grievance procedure set forth therein. The trial court found that appellant had filed a grievance pursuant to the terms of the Unit 10 agreement and abandoned it in favor of the court action. Having failed to exhaust the contractual remedies she was bound by, appellant could not pursue her claim in circuit court. The trial court granted summary judgment with respect to those counts chargeable to the State.

---

[3] There were also allegations of negligence, infliction of emotional distress stemming from the actions taken by the director of the DSSH, and collusion between the State and the Union.

[4] Appellant failed to oppose or respond by counter-affidavits or as otherwise provided by Rule 56(e), HRCP, setting forth specific facts showing there is a genuine issue for trial.

Given the well-settled rule of the doctrine of exhaustion of remedies in administrative law, 2 AM. JUR.2d *Administrative Law* § 595; this state's public policy favoring arbitration as a means of settling differences to avoid expensive and unnecessary litigation, *Kendall v. Kauhi,* 53 Haw. 88, 488 P.2d 136 (1971); Rules 52(a) and 56(c), HRCP; and the facts of this case, we find no error in the court's ruling that the State was entitled to summary judgment. Contrary to appellant's contentions, we hold that where the terms of public employment are covered by a collective bargaining agreement pursuant to HRS Chapter 89 and the agreement includes a grievance procedure to dispose of employee grievances against the public employer, an aggrieved employee is bound by the terms of the agreement. Here the grievance procedure consisted of five steps with the fifth step final and binding arbitration. At steps one through four, either the employee or the union could carry forward the grievance; and if the employee did so, only the union has the election to take the matter to arbitration (step 5). If the union elected not to go to arbitration, the employee would then have exhausted her administrative remedies and could have brought the employer into court.

Appellant argues that the United States Supreme Court's holding in *Vaca v. Sipes,* 386 U.S. 171, 87 S. Ct. 903 (1967), permits an action in unfair labor practices to be brought against the union for its wrongful refusal to process an employee's grievance.

Appellee Union argues that it cannot be guilty of wrongful refusal to process the grievance because the collective bargaining agreement at issue gives the employee the right to proceed with a grievance without union representation through Step 4. Therefore, because appellant exercised that option and with the advice of counsel abandoned the procedure, it is entitled to summary judgment. However, we think the fact that an employee is entitled to pursue the grievance without union representation is not dispositive of the question as to whether the union's non-representation was wrongful.

*Vaca v. Sipes, supra,* permitted a wrongfully discharged employee to seek judicial enforcement of the labor agreement against the union where, under the terms of the agreement, the union had the sole power to invoke the higher stages of the grievance procedure and had *wrongfully* refused to process the employee's grievance,

thereby breaching its statutory duty of fair representation.

In the instant case, it deserves notice that in the enactment of the contract's grievance procedures, it was not contemplated that the employee would utilize the procedures in a grievance against the union, itself; thus, no provisions have been incorporated into the contract to address this event. Therefore, as we see it, in this instance, the question of exhaustion of contractual grievance remedies available against the employer has no application in an action against the union. Accordingly, we hold that appellant could not be required to exhaust contractual remedies in an action against the union where no such remedies actually exist.

Under the rule in *Vaca v. Sipes, supra,* the employee faced with this dilemma is not left remediless, for the action can properly be brought into court. In Hawaii, such an employee apparently has two options. HPERB is empowered to resolve disputes between employees and their unions.[5]

HRS § 89-5   Hawaii public employment relations board.

(b) In addition to the powers and functions provided in other sections of this chapter, the board shall:

(4) conduct proceedings on complaints of prohibited practices by employers, employees, and employee organizations and take such actions with respect thereto as it deems necessary and proper;

Its jurisdiction in these matters, however, is not exclusive. In the face of the allegations that the union is guilty of prohibited practices,[6] the statutes permit such action to be brought before the board or in a court of competent jurisdiction.

HRS § 89-14   Prevention of prohibited practices.

Any controversy concerning prohibited practices may be submitted to the board in the same manner and with the same effect as

---

[5] *See, e.g.,*

*Jordan v. Hawaii Government Employees' Association, et al.,* 472 F. Supp. 1123.

*Fasi v. State Public Employment Relations Board, et al.,* 60 Haw. 436, 591 P.2d 113 (1979).

*Hawaii State Teachers' Association v. Hawaii Public Employment Relations Board,* 60 Haw. 361, 590 P.2d 993 (1979).

[6] HRS § 89-13   Prohibited practices; evidence of bad faith.

(b) It shall be a prohibited practice for a public employee or for an employee

provided in section 377-9. All references in section 377-9 to "board" shall include the Hawaii public employment relations board and "labor organization" shall include employee organization.

HRS § 377-9   Prevention of unfair labor practices.

(a) Any controversy concerning unfair labor practices may be submitted to the employment relations board in the manner and with the effect provided in this chapter, but nothing herein shall prevent the pursuit of relief in courts of competent jurisdiction.

HRS §§ 377-5 and 377-6 define those activities that constitute unfair labor practices. As it is defined, the statute does not contemplate that a union could commit an unfair labor practice. In contrast, the legislature in defining "prohibited practices" under Chapter 89 addresses activities that could be committed by the employer, employee, and the employee organization. Senate Committee Report No. 745-70 sheds some light on what the legislature sought to accomplish in enacting § 89-14.

(3) Prevention of prohibited practices. Your committee has reviewed the proceedings utilized by the Hawaii employment relations board for the prevention of unfair labor practices and finds that the same proceedings can effectively be utilized by the Hawaii public employment relations board for the prevention of prohibited practices. Your committee has included violations of an agreement among the list of prohibited practices. The proceedings applicable to prohibited practices shall be utilized to remedy any violations of an agreement. . . .

It seems clear then that under HRS § 89-14 prohibited practices whether committed by the employer, employee, or employee organization are to be treated in the same manner as unfair labor practices under HRS § 377-9. From a policy standpoint, it may have

---

organization or its designated agent wilfully to:
  (1) Interfere, restrain, or coerce any employee in the exercise of any right guaranteed under this chapter;
  (3) Refuse to participate in good faith in the mediation, fact-finding and arbitration procedures set forth in section 89-11;
  (4) Refuse or fail to comply with any provision of this chapter; or
  (5) Violate the terms of a collective bargaining agreement.

been preferable for appellant to pursue her relief from HPERB; however, nothing in the statute precludes this action from being brought in circuit court as well.

We have previously held that a motion for summary judgment should be denied where the proffered facts and the inferences which may fairly be drawn from them are reasonably susceptible to conflicting interpretation. *Kawaihae v. Hawaiian Insurance Companies,* 1 Haw. App. 355, 619 P.2d 1086 (1980). A motion for summary judgment is properly granted under Rule 56(c), HRCP, if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Lau v. Bautista,* 61 Haw. 144, 598 P.2d 161 (1979); *Kawaihae v. Hawaiian Insurance Companies, supra.*

With respect to the Union, the state of the record before us presents allegations of facts that are sufficiently controvertible to withstand the Union's motion for summary judgment. Accordingly, that judgment is reversed and remanded for trial.

The order granting summary judgment is affirmed with respect to the State and reversed with respect to the Union. The case is remanded for further proceedings consistent with this opinion.

*E. Courtney Kahr,* Attorney for plaintiff-appellant.

*Lawrence D. Kumabe,* Deputy Attorney General, for State of Hawaii, et al., defendants-appellees.

*James A. King,* Attorney for United Public Workers, et al., defendants-appellees.